**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

FRUTH, INC., Individually and on behalf
of all those similarly situated,

          Plaintiff,

v.                                    CIVIL ACTION NO.: 2:25-cv-00751

OPTUMRX, INC., et al.,

          Defendants.

**ORDER**

This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and is referred to the undersigned United States Magistrate Judge for resolution of discovery disputes. (ECF No. 4). Pending before the Court is the *Motion for Leave to Conduct Limited Discovery* filed by Plaintiff Fruth, Inc. ("Plaintiff") on March 16, 2026. (ECF No. 32). For the reasons set forth herein, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

I.     **BACKGROUND**

Plaintiff initiated this civil action on December 23, 2025. (ECF No. 1). Plaintiff alleges in this civil action that, since 2021, "the Defendants have intentionally, willfully, systematically, and with fraudulent intent engaged in an illegal scheme to violate" the West Virginia Pharmacy Audit Integrity Act (the "Act"), which—in relevant part—

regulates the conduct of Pharmacy benefits managers ("PBMs") such as the Defendants in their reimbursement of a pharmacy or pharmacist. *Id.* at ¶¶ 15-24 (citing W. Va. Code §§ 33-51-9(e)-(f)). Specifically, Plaintiffs allege that Defendants failed "to provide the Plaintiff and putative class members with a professional dispensing fee of $10.49 each time the Plaintiff and putative class members were reimbursed for prescription drugs and pharmacy services" in violation of W. Va. Code § 33-51-9(e). *Id.* ¶ 23. Additionally, Plaintiffs allege, *inter alia*, that Defendants "reimburs[ed] their own affiliated pharmacies for prescription drugs and pharmacy services at rates much higher than the rates at which they have reimbursed the Plaintiff and putative class members for the same prescription drugs and pharmacy services" in violation of W. Va. Code § 33-51-9(f). *Id.* ¶ 24. Plaintiff alleges, upon information and belief, that "each Defendant imposed unconscionable adhesive contracts which they have utilized specifically to violate the Act and to conceal those violations from the Plaintiff and putative class members." *Id.* ¶ 32.

According to the *Class Action Complaint*, "the adhesive contracts contain broad and onerous choice of law provisions and arbitration clauses" in order to "deprive Plaintiff and putative members of the class of their rights under the Act" via choice-of-law provisions and "arbitration in a state other than West Virginia." *Id.* ¶ 34. Plaintiffs conclude that Defendants "have utilized and surreptitiously used the adhesive contracts to illegally violate their obligations and Plaintiff's and putative class members' rights under West Virginia Code §§ 33-51-9(e) and (f), thereby utilizing the adhesive contracts for an illegal purpose." *Id.* ¶ 37. Plaintiff asserts that the contracts are unconscionable and that Defendants have used them "for an illegal purpose . . . to unjustly enrich themselves and steal millions of dollars from the Plaintiff and putative members of the class[.]" *Id.* ¶¶ 38-39. Plaintiff alleges that these alleged acts "render the contracts void as

unconscionable." *Id.* ¶ 39. Based upon the foregoing allegations, Plaintiff asserts claims against the Defendants for violations of § 33-51-9(e)-(f) of the West Virginia Pharmacy Audit Integrity Act; further, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201. *Id.* ¶¶ 47-58. Additionally, Plaintiff seeks certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. *See id.* ¶¶ 59-68.

On March 2, 2026, Defendant OptumRX, Inc. filed a *Motion to Compel Arbitration.* (ECF No. 12). That same day, Defendants Caremark, LLC and CaremarkPCS Health, LLC also moved to compel arbitration "and to stay all proceedings" against them. (ECF No. 14). On March 12, 2026, Defendant Express Scripts, Inc. filed a *Motion to Dismiss Plaintiff's Class Action Complaint and, Alternatively, to Strike Class Claims* (ECF No. 26) as well as a *Motion to Sever and Transfer Claims against Express Scripts* (ECF No. 28). Each of these motions remain pending.

On March 16, 2026, Plaintiff filed its subject *Motion for Leave to Conduct Limited Discovery* "concerning the formation, validity, enforceability, and arbitrability of the alleged arbitration agreements in connection with Defendants OptumRx, Inc. [hereinafter "Optum," and], Caremark, LLC, CaremarkPCS Health, LLC, and CaremarkPCS, LLC" [hereinafter, the "Caremark" Defendants]. (ECF No. 32). On March 23, 2026, Defendant Optum responded in opposition to the motion. (ECF No. 36 at 24-26). The Caremark Defendants then filed a response in opposition to the motion on March 30, 2026. (ECF No. 42). That same day, Plaintiff filed a reply to Optum's response. (ECF No. 43). Finally, on April 6, 2026, Plaintiff filed a reply to Caremark's response. (ECF No. 46). Accordingly, Plaintiff's *Motion for Leave to Conduct Limited Discovery* (ECF No. 32) is ripe for adjudication.

## II.   <u>DISCUSSION</u>

Notably, this discovery dispute arises in the context of pending motions to compel arbitration by Optum and Caremark. (ECF Nos. 12, 14). In support of its subject discovery motion, Plaintiff argues that limited discovery from the Optum and Caremark Defendants is necessary to support its position that the arbitration provisions at issue are unenforceable. Plaintiff asserts that 9 U.S.C. § 1 as well as Rule 81(a)(6)(B) of the Federal Rules of Civil Procedure permit discovery "on matters relevant to the existence of an arbitration agreement to determine whether to stay or compel arbitration." *Id.* at 2-3. Consequently, Plaintiff requests a period of ninety (90) days for the parties to conduct "limited" and "narrowly tailored" discovery relating to (1) the formation of the alleged arbitration agreements; (2) the validity and enforceability of the agreements; (3) what the applicable terms are of such agreements; (4) whether the terms of an individual arbitration agreements permit independent pharmacies to effectively vindicate their state statutory rights; and (5) to further develop the record pertaining to the Plaintiff's contract defenses. *Id.* at 8. Plaintiff's motion seeks the limited discovery "in connection with Defendants OptumRx, Inc., Caremark, L.L.C., CaremarkPCS Health, L.L.C., and CaremarkPCS, L.L.C." *Id.* at 1.

Defendant Optum opposes "Plaintiff's conclusory request for discovery" on the grounds that Plaintiff "makes no mention of how the requested discovery might apply to its arguments" in opposition to arbitration. (ECF No. 36 at 24). Optum asserts that "such discovery is permitted" in this context "only when the non-movant demonstrates that a genuine dispute exists over the formation of the agreement to arbitrate." *Id.* According to Optum, however, "Plaintiff does not even attempt to demonstrate such a genuine dispute, let alone a dispute that it needs discovery to resolve"—particularly where Plaintiff does

4

not deny that it entered into the arbitration agreement. *Id.* Further, Optum argues that "the non-specific categories of documents Plaintiff lists" in its proposed discovery requests "are either irrelevant to [the motion to compel arbitration], relate to undisputed facts, or are already in Plaintiff's possession." *Id.* at 25. Lastly, Optum argues that "[t]he cases Plaintiff relies on are distinguishable[.]" *Id.* at 25-26.

The Caremark Defendants likewise oppose Plaintiff's motion, arguing that Plaintiff "has not established any basis for discovery." (ECF No. 42 at 5; *see also* ECF No. 37 at 28). Caremark explains that Plaintiff "must identify with some particularity the additional discovery needed to defeat the motion to compel arbitration." (ECF No. 37 at 28) (citing *Klein v. Sinclair Broad. Grp., Inc.*, 8:21-cv-476, 2021 WL 5326467, at *3 (D. Md. Nov. 16, 2021)). Relying in *Klein*, the Caremark Defendants further argue that the Plaintiff "must demonstrate by affidavit or declaration that [it] cannot present facts essential to justify [its] opposition" to the motion to compel arbitration absent discovery, and "[w]here the parties merely disagree as to the interpretation of the relevant agreement but do not dispute any facts, the motion must be decided as a matter of law." *Id.*  Caremark argues that, here, Plaintiff "does not dispute any of the facts Caremark set forth in support of the Motion [to Compel Arbitration], nor does [Plaintiff] identify any facts not already within its knowledge that it needs to oppose arbitration." (ECF No. 42 at 5). Caremark concludes that discovery under such circumstances "would serve no purpose other than to delay resolution of Caremark's Motion to Compel Arbitration, contrary to Congress's clear intent" in the Federal Arbitration Act "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)).

5

In its reply to Optum's response, Plaintiff argues that Optum "attempts to impose a heightened and improper burden on Plaintiff, requiring [it] to prove the invalidity of the arbitration agreements before it is permitted access to the very evidence necessary to do so." (ECF No. 43 at 1). Further, Plaintiff argues that it "has identified specific, fact-dependent challenges to arbitrability (including contract formation, assent, unconscionability, prospective waiver, and the Defendants' unilateral modification of arbitration provisions) all of which turn on information exclusively within Optum's control." *Id.* at 1-2. Plaintiff reiterates that it seeks "discovery on narrowly tailored issues of formation of the alleged arbitration agreements, the validity and enforceability of the agreements, what the applicable terms are of such agreements, whether the terms of an individual arbitration agreements permit independent pharmacies to effectively vindicate their state statutory rights, and to further develop the record pertaining to the Plaintiff's contract defenses." *Id.* at 5. Plaintiff also challenges Optum's assertion that the case law relied upon in Plaintiff's motion is distinguishable. *Id.*

Finally, in its reply to Caremark's response, Plaintiff argues that it "is not required to submit an affidavit explaining why it cannot present facts essential to justify its opposition because . . . [w]hile the summary judgment standard is sometimes applied to a motion to compel arbitration, that application is limited—not a wholesale application of Rule 56 and all its procedural mechanisms." (ECF No. 46 at 2). According to Plaintiff, "[t]he summary judgment standard is merely an evidentiary lens" and therefore "[a] court's reliance on the summary judgment standard governs nothing more than how a court evaluates the evidence, not what procedural tools must be invoked." *Id.* at 2-3. Furthermore, Plaintiff argues that, even if "this Court relies on Rule 56's procedural framework, [Plaintiff] has demonstrated that it has not had an opportunity to conduct

6

discovery and that it has a need for essential discovery to its opposition." *Id.* at 3. Plaintiff argues that, "[r]elying on Caremark's own argument that its motion to compel arbitration is a motion for summary judgment, all parties are therefore entitled to reasonable pre-arbitration discovery." *Id.* at 4.

Plaintiff further points to the Affidavit of Lynne Morrow Fruth in support of its request for discovery, asserting that "[t]his affidavit and [Plaintiff's] briefs sufficiently demonstrate a genuine issue of material facts as to the validity of both Caremark's and Optum's delegation provisions and arbitration clauses." *Id.* at 6 (citing ECF Nos. 33-8; 33-9). Specifically, Plaintiff argues that this "sworn evidence" demonstrates the following: "(1) the lack of negotiation and adhesive, take-it-or-leave-it contracts; (2) absence of meaningful choice due to the Defendants' market dominance; (3) lack of transparency regarding contract (and arbitration) terms and reimbursement practices; and (4) lack of awareness of arbitration provisions and waiver of statutory rights." *Id.* at 7 (citing ECF No. 33-8). Plaintiff asserts that "these defenses require factual development." *Id.* Plaintiff concludes that "a plausible basis" therefore "exists for discovery which will influence the outcome of each pending motion to compel arbitration." *Id.* at 6.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., "calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses," in furtherance of "Congress's clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Diggs v. Citigroup, Inc.*, 551 Fed. App'x 762, 766 (5th Cir. 2014) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)).

The FAA provides for discovery and a trial before the Court in connection with a motion to compel arbitration only if, as relevant, "the making of the arbitration

agreement" is at issue. *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4). *See also Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 775 n.5 (3d Cir. 2013) (quoting *Simula*, 175 F.3d at 726). In *Simula*, for instance, the Ninth Circuit Court of Appeals explained that even fraud claims must be submitted to arbitration unless the arbitration clause itself was fraudulently induced. *Id.* (finding that the plaintiff's claim of "fraud in the inducement and economic duress of the 1995 Agreement as a whole . . . are questions for the arbitrator"). *See also Prima Paint Corp v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967) (explaining that the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally," and that the federal court may proceed only "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate").

Accordingly, "if a party challenges the enforceability of an arbitration agreement, courts generally permit discovery regarding the formation and performance of the arbitration provision." *Dillon v. BMO Harris Bank, N.A.*, 1:13-cv-897, 2015 WL 6619972, at *3 (M.D.N.C. Oct. 30, 2015) (citing, *inter alia, Blankenship v. Seventeenth St. Assocs., LLC*, 3:11-cv-0627, 2012 WL 10008266, at *1 (S.D. W. Va. Feb. 1, 2012)). However, "[o]nly discovery tailored to matters pertinent to the disposition of the [motion] to compel arbitration and/or stay litigation may occur." *Dillon*, 2015 WL 6619972, at *3 (citing *THI of S.C. at Charleston, LLC v. Vance*, 2:13-cv-01483, 2014 WL 896717, at *1-2 (D.S.C. Feb. 26, 2014)).

In the *Vance* case before the U.S. District Court for the District of South Carolina, for instance, a nursing home sought to compel arbitration and stay a wrongful-death action brought by the decedent's daughter. *Vance,* 2014 WL 896717, at *1. The decedent's

daughter challenged the arbitration clause as unconscionable and sought discovery in the form of arbitration agreements between the nursing home and other nursing-home residents. *Id.* The U.S. District Court for the District of South Carolina found that the discovery sought had "no bearing on an issue of material fact" and issued a protective order, explaining that "the Court could order discovery on matters relevant to the existence or enforceability of the arbitration agreement at issue, but that if a party's proposed discovery is overly broad or irrelevant to the disposition of the motion to compel arbitration, the Court would not allow it." *Id.* at *2.

Here, the undersigned **FINDS** that the making of the arbitration agreement is directly at issue because Plaintiff's Complaint expressly challenges the arbitration clauses, alleging *inter alia* that "each Defendant imposed unconscionable adhesive contracts . . . contain[ing] broad and onerous . . . arbitration clauses" in order to "deprive Plaintiff and putative members of the class of their rights" under the West Virginia Pharmacy Audit Integrity Act, W. Va. Code § 33-51-1, *et seq.* (*See* ECF No. 1). Accordingly, Plaintiff may reasonably conduct discovery limited to the formation and performance of the arbitration provision to the extent necessary to oppose Defendants' motions to compel arbitration. However, the undersigned further **FINDS** that Plaintiff's proposed discovery is overbroad, particularly with respect to "Caremark's internal policies regard[ing] arbitration and enforcement; [r]elationships among affiliated entities attempting to involve arbitration; and [t]he operation of choice-of-law provisions and their effect on state statutory rights" exceed the scope of discoverability under the FAA. *See Dillon*, 2015 WL 6619972, at *3.

### III.  **CONCLUSION**

Accordingly, for the foregoing reasons, **IT IS ORDERED** that Plaintiff's *Motion for Leave to Conduct Limited Discovery* (ECF No. 32) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's request to take discovery is **DENIED IN PART** such that Plaintiff may not pursue the full scope of discovery sought in its subject motion. The Court **GRANTS IN PART** Plaintiff's request, only to the extent that Plaintiff may seek targeted discovery restricted solely to "the formation and performance of the arbitration provision[s]" in connection with Defendant Optum and the Caremark Defendants.

It is **FURTHER ORDERED** that the scope of discovery shall be additionally limited,[1] as follows:

(1)    The parties shall have ninety (90) days from the date of this opinion to conduct discovery (hereinafter the "designated discovery period");

(2)    Each party may propound a maximum of five interrogatories, five requests for production of documents, and five requests for admission. All responses are due within the time periods set forth in the Federal Rules of Civil Procedure and the Court's Local Rules of Civil Procedure;

(3)    Each Defendant may take a maximum of two depositions within the designated discovery period, and Plaintiff may take a maximum of two depositions as to Defendant Optum, and a maximum of two depositions as to the Caremark Defendants within the designated discovery period.

---

[1] *See Rolen v. Virginia CVS Pharmacy, LLC*, 1:24-cv-33, 2025 WL 757593, at *6 (W.D. Va. Mar. 10, 2025); *Alston v. Barclays Bank Delaware*, 8:18-cv-2829, 2019 WL 13487572, at *2 (D. Md. Apr. 16, 2019).

The parties are hereby **NOTIFIED** that failure to demonstrate strict compliance with Rule 37.1(b) of the Court's Local Rules of Civil Procedure **WILL** result in summary denial of any motion filed in aid of discovery.

**IT IS SO ORDERED**.

The Clerk of Court is **DIRECTED** to transmit a copy of this Order to counsel of record and any unrepresented party.

ENTERED:   April 8, 2026

Dwane L. Tinsley
United States Magistrate Judge